IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CLAXTON H. WILLIAMS, JR. #N-62439,** | ) |
| Plaintiff, | ) ) |
| vs. | ) Case No.   12-cv-1081-MJR-SCW ) |
| **J. SHEPHERD, DENNIS LARSON, LOUIS SHICKER, and WEXFORD HEALTH SOURCES, INC.,** | ) ) ) ) |
| Defendants. | ) |

### REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

#### I.   Introduction

This case is before the Court on Plaintiff's Motion for Emergency Protective Order (Doc. 4). Plaintiff renewed his request for a protective order on two subsequent occasions, which supplement his earlier Motion in part (Doc. 70 & Doc. 73). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a). Judge Williams held a hearing on Plaintiff's Motion on February 25, 2012. It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **DENY** Plaintiff's Motions for Emergency Protective Order (Docs. 4, 70 & 73).

#### II.   Findings of Fact

This case was originally filed as part of a larger lawsuit alleging excessive force against various prison guards who Plaintiff claimed attacked him on March 22, 2011 (Doc. 1). As Plaintiff's claims in this case relate strictly to the medical care he received after his March 6, 2012 stroke, this case

was severed from the other claims. (Doc. 1). On October 10, 2012, Plaintiff had filed a Motion for a Temporary Restraining Order requesting a that the Court order a neurologist consult for Plaintiff, a course of physical therapy, issue a declaratory judgment that the stroke exacerbated Plaintiff's pre-existing medical conditions, and order Defendants to resume Plaintiff's previously discontinued muscle relaxant. (Doc. 4).

The Court held a hearing on Plaintiff's Motion on February 25, 2013. (Doc. 68). The Court heard testimony from Plaintiff and Dr. Saleh Obaisi. Plaintiff testified that his current stroke symptoms include confusion, voices, ringing or clicking in his ears, disturbed perception, blurry vision, and physical weakness on his left side. Plaintiff also testified that he must be transported via wheelchair.

Dr. Obaisi, the medical director at Stateville, testified that Plaintiff was not in any acute distress as a result of his stroke. Prior to his testimony, Dr. Obaisi reviewed Plaintiff's medical records and what Plaintiff had previously told him. Dr. Obaisi does not believe that the SLU radiology study shows any implications for upper level functioning, such as memory or decision making. He further testified that physical therapy is not medically necessary, but that he would order it because the plaintiff, Mr. Williams, believed that it would make a difference. Dr. Obaisi believed Plaintiff would receive "very minimal" benefits from physical therapy, if any. Dr. Obaisi also testified that it was a good idea to send Plaintiff for a neurological consult because he had never had a follow-up. However, Dr. Obaisi noted that it would take time to schedule the consult because of IDOC procedures and because Plaintiff's condition is not acute. Although Plaintiff disputed his characterization, Dr. Obaisi also testified that Plaintiff had begun physical therapy at the time of the February 25, 2013 hearing. Dr. Obaisi was also currently prescribing a muscle relaxant for Plaintiff.

Plaintiff then supplemented his Motion for a protective order on two other occasions.

On March 14, 2013, Plaintiff filed his Motion for Emergency Protective Order (Doc. 70). Specifically, Plaintiff alleges that he has been sentenced "to death by pain, torture, suffering, and abuse" and that he has been subjected to lengthy delays for medical treatment. Plaintiff argues that he is being placed in dangerous situations with other inmates and continually being denied medical care, including denying him medication and access to a neurologist. Plaintiff's motion asks for a Court Order directing IDOC to take him to a neurologist and have the results delivered to the Court, housed back in a single cell due to his vulnerability caused by his earlier stroke, provide Plaintiff with medications, and appoint counsel. Plaintiff also asks that IDOC Director Salvador Godinez, who is not a party to this suit, be ordered to address Plaintiff's being put in double cells, have Plaintiff taken to a specialist, and to provide Plaintiff with physical therapy.

On March 27, 2013, Plaintiff filed another Motion for Protective Order (Doc. 73) which further addressed his requests to the Court. In that motion, in addition to requesting counsel due to deteriorating health, Plaintiff also indicated that he was being housed in a cell that was infested with rats and roaches and that he had to kill a rat while it was biting him. Although Plaintiff does not specifically state what remedy he seeks, it appears that he again seeks a consult with a neurologist, a move to a different cell, a settlement conference, and an Order from the Court requiring Louis Shicker, John Shepard, and Dennis Lason to appear in Court in person.

Defendant Shicker filed an objection to Plaintiff's first Motion for a protective order on January 1, 2013. (Doc. 52). The other Defendants filed a Response on February 1, 2013. (Doc. 58). The Court heard oral arguments on the Motion on February 25, 2013. Additionally, Defendants have filed Responses (Docs. 72 & 75) to both of Plaintiff's subsequent motions.

### III. Conclusions of Law

Plaintiff seeks a preliminary injunction of several affirmative orders from the Court

regarding various conditions of his confinement.

**A.    Injunction Standard**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." ***Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). *Accord Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right").** To win a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. ***Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) (citing *Winter*, 555 U.S. at 20).** The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." ***Judge*, 612 F.3d at 546.**

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). ***Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012).** Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. §3626(a)(2). *See also Westefer*, 682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

The Seventh Circuit has described injunctions requiring an affirmative act by the defendant as mandatory preliminary injunctions. **Graham v. Med. Mut. of Ohio, 130 F.3d 293, 295 (7th Cir. 1997).** Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. **Id. (citing Jordan v. Wolke, 593 F.2d 772, 774 (7th Cir. 1978)). See also W.A. Mack, Inc. v. Gen. Motors Corp., 260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").**

A TRO may issue without notice:

> only if: (A) specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition, and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

**FED.R.CIV.P. 65(b).**

**B.    Analysis**

The undersigned **RECOMMENDS** that Plaintiff's motions be **DENIED** because he has not shown that he is likely to suffer irreparable harm or a likelihood of success on the merits. Plaintiff repeatedly argued that he needed follow-up care to his stroke immediately in order to fully recover. However, Plaintiff filed his request for a mandatory injunction in September of 2012, nearly six months after his stroke. Further, Dr. Obaisi testified that Plaintiff's medical records show repeated instances where Plaintiff refused medical treatment after his stroke. He also testified that even if Plaintiff was granted the relief he sought, his improvement at this stage would be "very minimal" and that Plaintiff was not currently suffering from any acute distress. The undersigned finds, therefore, that Plaintiff has not carried his burden of persuasion on the issue of irreparable harm. Even if the Court were to grant the relief he seeks, the record establishes that Plaintiff's condition

would not significantly improve, which means that there is no danger of immediate irreparable harm. As a final matter, the undersigned notes that the Defendants claim that the medical treatment Plaintiff is requesting here has been ordered for him, which would normally make Plaintiff's motion moot. Plaintiff disputed this characterization at the hearing and continues to dispute it in his subsequent motions. However, regardless of whether the medical treatment was ordered or forthcoming, Plaintiff has not made the requisite showing for a preliminary injunction as to the issue of medical treatment.

Plaintiff states in his later motions that he is being subject to dangerous cell conditions. These allegations are not the subject of his current lawsuit. Plaintiff's current suit focuses on the alleged denial of medical care, not his vulnerability in being housed with other inmates. Thus, the undersigned agrees with Defendant that the relief Plaintiff seeks as to his current housing situation is outside the scope of his current Complaint. Further, as Defendant points out, Plaintiff seeks an Order compelling IDOC Director Salvador Godinez to provide Plaintiff with certain requested relief, but Godinez is not a party to this suit. To the extent that Plaintiff seeks Protective Orders on these issues they will be denied as Plaintiff cannot show that he will succeed on the merits when the parties and issues are outside of the scope of the Complaint.

Plaintiff's March 27th motion also seeks an Order compelling Louis Shicker, John Shepherd, and Dennis Larson to appear in person. Plaintiff was given an opportunity to present evidence at his February 25, 2013 hearing. He did not call or even attempt to call any of the named Defendants in this case. Defendants are permitted to put on evidence as they see fit, and they chose to present evidence through the testimony of Dr. Obaisi. Plaintiff has not made a showing that he has suffered or will suffer irreparable harm in the future due to his own failure to call the named Defendants at his hearing. Additionally, he has not cited any case law to support the proposition that

his own failure to call witnesses is a claim with a substantial likelihood of success on the merits. Therefore he is not entitled to an injunction on this point. The undersigned, accordingly, finds that Plaintiff has not carried his burden as to the additional requests in his subsequent motions for protective orders.

### IV. Conclusion

Accordingly, the undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's Motion for Temporary Restraining Order (Doc. 4), as well as the subsequent Motion for Emergency Protective Order (Doc. 70) and Motion for Protective Order (Doc. 73).

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before June **3, 2013**.

**IT IS SO ORDERED**.

DATED: May 15, 2013.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge